---

(19 Misc. Rep. 402.)

### In re FRITTS' ESTATE.

#### (Surrogate's Court, Otsego County. February, 1897.)

1. WILLS—ACCUMULATION OF INCOME—IMPLIED DIRECTION.

     A will impliedly directs an accumulation by the trustees of rents and profits during the infancy of the beneficiary, where it gives the entire estate to the trustees, with power to sell or do whatever might, in their judgment, be best for the interests of the estate, and out of the proceeds to pay the infants one-third on their arriving at the age of 21 years.

2. SAME—RIGHT TO ACCUMULATION BEFORE TERMINATION OF TRUST.

     An infant for whose benefit the income is directed to be accumulated until he becomes 21 years old is not entitled, as a matter of right, to any part of

the accumulation or income thereof during infancy, but a suitable sum may be applied to his support and maintenance, as provided by 1 Rev. St. p. 720, § 39, where he is destitute of other means of support and education.

3. RES JUDICATA—IDENTITY OF PARTIES.
    The denial of an application by the father of an infant to have part of the accumulations of the income of a legacy payable to his infant son, on attaining majority, applied to his support and education, does not bar a subsequent application by the general guardian of the infant for the same purpose, where the general guardian was not a party to his first proceeding.

· Proceeding by Walter L. Brown, as general guardian of Myrtle Fritts, an infant, to compel Hartford D. Nelson, as surviving executor and trustee under the will of Hiram Fritts, deceased, to pay over to petitioner a part of the accumulations on a legacy to said infant. Granted.

W. H. Johnson, for Walter L. Brown, as general guardian of Myrtle Fritts, an infant.

Gibbs & Wilber (A. R. Gibbs, of counsel), for Hartford D. Nelson, as surviving trustee under the will of Hiram Fritts, deceased.

ARNOLD, S.    Hiram Fritts died on the 27th day of May, 1887, leaving a last will and testament, which was duly admitted to probate by the surrogate's court of Otsego county on the 9th day of June, 1887. The only portion of said will which comes up for consideration at this time is the fifth paragraph, which reads as follows, namely:

"Fifth. I give, devise, and bequeath all my other property, both real and personal, to my executors in trust, with power to sell and convey the same, or to do what, in their judgment, will be for the best interest of my said estate, and, out and from the proceeds of said property, to pay to Delorah Murdock one-third thereof, and to Huldah Murphy one-third thereof, and to the children of Perkins Fritts one-third thereof, to be equally divided between them, share and share alike, upon their arriving at the age of twenty-one years."

Perkins Fritts has two children, namely, Erwin Fritts and Myrtle Fritts, both of whom were at the time of the death of the testator under 21 years of age.    On the 12th day of September, 1889, a judicial settlement was had by the surviving executor of said will.    By the decree in that proceeding it is determined that the executor shall retain in his hands the sum of $5,089.77, as the share of the two children of Perkins Fritts under the said fifth clause of said will; one-half to be paid to each on his or her arriving at the age of 21 years.    According to the terms of said will and said decree, Myrtle Fritts, on her arriving at the age of 21 years, will be entitled to receive from the hands of the executor and trustee of said will the sum of $2,543.88. It appears from the testimony that Myrtle Fritts is now about 16 years of age; that she is in destitute circumstances, and without means of support; that at the present time she is being maintained and schooled by relatives, who are under no legal obligation to so provide for her.    Her general guardian therefore asks for an order directing said trustee to pay over to him some portion of the accumulations, now amounting to several hundred dollars, to be used for the support and maintenance of said child.    The application is contested by the trustee on several grounds; and the issues raised present some·perplexing questions, which do not seem to have been adjudicated by any reported case in this state.

The contention of the learned counsel for the general guardian is: First. That the estate given to Myrtle Fritts is a vested expectant estate; that all of her rights became vested upon the death of the testator; that the time of possession is simply postponed. Second. That there is a suspense of the power of alienation of said estate, during the continuance of which the rents and profits are undisposed of; and that no valid direction for their accumulation is given; and, therefore, that by virtue of 1 Rev. St. p. 726, § 40, such rents belong to Myrtle Fritts; that she is the person presumptively entitled to the next eventual estate.

I do not think that the question as to whether the estate given to Myrtle Fritts is vested or contingent controls the disposition of this matter. In re Cochrane, 140 N. Y. 516, 35 N. E. 971. Apparently, however, the estate given to Myrtle Fritts vested in her upon the death of the testator. Phipps v. Ackers, 9 Clark & F. 583; Bunyan v. Pearson, 8 App. Div. 84, 40 N. Y. Supp. 429. The propositions to be disposed of here would seem to be the following: First. What is the duty of the surviving trustee as to the annual income, rents, and profits received from the expectant estate above referred to? Is it his duty to collect these rents and profits? If so, what is to be done with them at the present time? Are they to be paid to any one now, or are they to be accumulated? Second. If it is the duty of the trustee to collect the rents and profits, and accumulate the same, does that duty create a direction by implication for the accumulation of such rents and profits? Third. If there is a direction for the accumulation of such rents and profits by implication, what are the rights of Myrtle Fritts now? Fourth. If there is no direction for the disposition of the rents and profits, and no direction either by express words or by implication for the accumulation of the same, what are the rights of Myrtle Fritts? These propositions will be considered in their order.

It seems to have been the settled rule of the common law, where a specific devise was made to take effect in futuro, so that at the death of the testator there is no person actually entitled to the immediate income, rents, and profits, the same descended to the heirs at law, and it was immaterial whether the future devise was vested or contingent; that a bequest of personalty to take effect in futuro carried with it the accumulation of income, and, where real and personal estate were blended in one gift, it was considered to be the intention that both species of property should be subject to the rule applicable to personalty. 1 Jarm. Wills (6th Ed.) 614, and cases there cited. After the will of Mr. Thelluson, the British parliament enacted certain laws to prevent a repetition of the evils complained of in that will; and our legislature, early in the century, put upon the statute books an act to prevent the same evils.

The sections which concern the disposition of this case are found in 1 Rev. St. p. 726, §§ 37–40. Sections 37 and 38 provide as follows, namely:

"Sec. 37. An accumulation of rents and profits of real estate, for the benefit of one or more persons, may be directed by any will or deed, sufficient to pass real estate, as follows: (1) If such accumulation be directed to commence on

the creation of the estate out of which the rents and profits are to arise, it shall commence within the time in this article permitted for the vesting of future estates and during the minority of the persons for whose benefit it is directed, and shall terminate at the expiration of such minority. * * *

"Sec. 38. If, in either of the cases mentioned in the last section, the direction for such accumulation shall be for a longer term than during the minority of the persons intended to be benefited thereby, it shall be void as respects the time beyond such minority. And all directions for the accumulation of the rents and profits of real estate, except such as are herein allowed, shall be void."

In discussing this matter, I shall simply refer to sections 37 to 40, inclusive. The rule as to personal property is the same. 1 Rev. St. 773, §§ 1–5.

At the outset it must be admitted that there are no express words used in the will directing an accumulation of the rents and profits. If there is any direction, such direction is by implication. If there is a direction, there is a valid direction, because it is within the provisions of the sections of the statute above quoted, the same being for the benefit of one or more minors, and terminating at the expiration of their minority. In the case at bar it must be admitted that it is the duty of the surviving trustee to collect and receive the annual income, rents, and profits from this expectant estate. No disposition during the minority of Myrtle Fritts being directed, it is the duty of the trustee to accumulate the same. The language of the will, taken in connection with the substantive law, by making this the duty of the trustee, creates a direction for the accumulation of the rents and profits. That being the case, there is as clearly a direction for the accumulation of the rents and profits by this trustee as though the will in express words had commanded him "to collect the rents and profits, and accumulate the same during the minority of Myrtle Fritts." Gilman v. Reddington, 24 N. Y. 9, 19.

In the recent case of Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971, it appears from the facts that the trustees appointed by the will received from the estate a surplus income of about $60,000, which was wholly undisposed of by said will. The question arose as to who was entitled to this surplus income; whether it was to be accumulated, and, if not, to whom it was to be paid. Chief Justice Andrews, in delivering the opinion of the court, says, at page 527, 140 N. Y., at page 974, 35 N. E.:

"There was no express direction for the accumulation of the large surplus income which would be likely to arise and be received by the trustees, nor any express disposition thereof as such, made by the will. But, in the absence of any express direction for accumulation or other disposition, it would be the duty of the trustees under the will to retain and accumulate it, and from this duty a direction for accumulation is implied. * * * If the will in this respect is carried out, the accumulated fund, together with the corpus of the estate, will go to the eight grandchildren or their issue at the termination of the trust under the twelfth section."

Manice v. Manice, 43 N. Y. 303, 385; Smith v. Parsons, 146 N. Y. 116, 40 N. E. 736.

The conditions recited by Chief Justice Andrews, above quoted, are exactly the conditions in the case at bar, and his language would seem to be sufficient authority for holding, as I do, that in this case there is a direction by implication for the accumulation of the rents

and profits. If this is so, the contention of the learned counsel for
the general guardian cannot be sustained,—that there is no valid
direction for the accumulation of the rents and profits in the case at
bar, and that the infant is entitled to the payment of the rents and
profits accruing from this estate. His contention is based mainly on
the authority of Cochrane v. Schell; but he seems to have overlooked
the fact that in that case the court found that there was a direction for
accumulations, but that such direction was void because it was to com-
mence at the testator's death, and was or might be for the benefit of
persons not then in being, and of adults as well as infants, and there-
fore the court in that case held that the persons entitled to the next
eventual estate were entitled to be paid during the lifetime of the
trust the surplus rents and profits, under section 40 of the statute
above quoted. But in the case at bar there is the same implied direc-
tion for accumulations as in the Cochrane Case. The only difference
being that the direction in the case at bar is within the statute, and
valid, while in the Cochrane Case it contravened the directions of the
statute and was void. The duty of the trustee in the case at bar is
to collect and receive the rents, income, and profits from this expect-
ant estate during the minority of Myrtle Fritts. Upon her arriving
at the age of 21 years, she will be entitled to the corpus of the estate
and the accumulated income arising therefrom. In the meantime she
is not entitled, as a matter of right, by law, to any portion of the
annual income or the accumulations thereof.

This determination leaves only the provisions of section 39 of the
statute for construction. That section, as amended by chapter 172.
of the Laws of 1891, reads as follows:

"Sec. 39. Where such rents and profits are directed to be accumulated for
the benefit of infants entitled to the expectant estate, and such infants shall
be destitute of other sufficient means of support and education, the supreme
court at special term, and where such accumulation has been directed by a
last will and testament, the surrogate's court of any county in which such last
will and testament has been admitted to probate, upon the application of their
guardian, may direct a suitable sum out of such rents and profits to be applied
to their maintenance and education."

The revisers, in their notes printed in the second edition of the Re-
vised Statutes (volume 3, at page 578), in speaking of this section 39
of the statute, say:

"The propriety of permitting the rents and profits to be applied, under the
direction of the chancellor, to the support and education of infants, who, if of
full age, would be entitled to them, we presume, will not be doubted. This
provision will effectually prevent such an unnatural abuse of power as was
practiced by Mr. Thelluson in the will which occasioned the passage of the
British act. This gentleman, that he might gratify his deathbed vanity with
the conviction that an enormous estate would be secured to his distant pos-
terity, left his immediate descendants in a state of comparative destitution,
consoling them by the remark 'that, if prudent and industrious, they might, as
he had done, acquire estates for themselves.' "

From these notes it would appear that the revisers intended to pro-
vide for the exigencies of exactly such a case as is the one at bar. Sec-
tion 39 allows this court, as well as the supreme court at special
term, in a case where rents and profits are directed to be accumulated
for the benefit of infants entitled to the expectant estate, upon the ap-

plication of the general guardian, to direct a suitable sum out of such rents and profits to be applied to the maintenance and education of the infant.

Holding, as I do, that in this case there is a direction for an accumulation of the rents and profits by implication, for the benefit of this infant, who is entitled to the expectant estate, and such infant being destitute of other sufficient means of support and education, I further hold that the case is thus brought within the provisions of section 39 of the statute, and that this court has the power to direct the trustee to pay to the general guardian a suitable sum out of such rents and profits, to be applied to the maintenance and education of this infant.

It appears that some time since an application somewhat similar to the present one was made by the father of this infant to the supreme court at special term; that that application was denied. The order in that motion is pleaded in this proceeding as a bar. The point upon which I make this decision does not seem to have been presented to the special term, nor to have been considered by it. The general guardian of the infant was not a party to that proceeding; so that it does not seem that that application can be held to be res adjudicata, and a bar to this proceeding.

An order may be entered in accordance with the views herein expressed. Ordered accordingly.