In the Matter of the Judicial Settlement of the Accounts of MARIAN E. HOLLENBECK and Another, as Executors, etc., of WARREN P. HOLLENBECK, Deceased.

Surrogate's Court, Schoharie County, June 24, 1929.

*F. Walter Bliss*, for the executors.

*Claude B. Mayham*, special guardian for certain infant legatees.

BEEKMAN, S.   Petition for the judicial settlement of the accounts of the executors asks for construction of the will, and citation was issued accordingly and returned with due service.

The testator bequeaths to his wife, Marian E. Hollenbeck, the sum of $4,000 absolutely, by the 2d paragraph of his will.   The 3d paragraph of his will is as follows: " In addition to the provision made for my wife Marian E. Hollenbeck in Paragraph ' Second ' of this my Will, I direct my executors hereinafter named to pay to the said Marian E. Hollenbeck during the term of her natural life, the sum of Three Hundred Dollars annually in quarterly install-ments of Seventy-five Dollars each."

The 4th paragraph reads as follows: " I give and devise to my said wife Marian E. Hollenbeck, any and all real estate which may belong to me at the time of my death, she to have the use, posses-sion, rents, issues and profits therefrom so long as she shall live and in the event that she may desire to sell same, I hereby authorize and empower her and her co-executor of this my said Will to sell the same.   In case said real estate shall be sold, I direct that the proceeds of any such sale shall be deposited by my executors in a Savings Bank or Trust Company at interest and form a part of my residuary estate to be disposed of according to the provisions of Paragraph ' Fifth ' of my Will.   In the event that my said wife Marian E. Hollenbeck shall die without having conveyed any of said real estate, I give and devise the remainder thereof to the persons hereinafter named in Paragraph ' Fifth ' of my Will in the shares therein named the same to be theirs absolutely and forever. In case my wife shall choose to retain said real estate during her lifetime, I will and direct that she shall pay all taxes which may be

assessed against said property during her tenancy. I further direct that all expenses for fire insurance and necessary repairs shall be a charge upon my estate."

The 5th paragraph of the will reads: "*Fifth.* Upon the death of my said wife, Marian E. Hollenbeck I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, unto the following named persons as follows:" Here follow the names of nephews and nieces, grandnephews and grand-nieces, to whom the residue is given in different proportions. The will states that the provisions for the wife are in lieu of her dower.

After the payment of the $4,000 to the widow, the funeral and other expenses and the expenses of the accounting, there will apparently be between $8,000 and $9,000 of personal property out of which and the income thereof, the annuity of $300 per year to the widow will have to be paid. The question arises as to what disposition is to be made of the surplus annual income in case the fund in the hands of the executors produces an income in excess of the $300 annuity, and the expenses for fire insurance and necessary repairs of the residence and real estate mentioned in the 4th paragraph. There may be an excess of interest and income upon the fund, depending, of course, upon the rate of interest which may be obtained upon the moneys invested in securities such as executors or trustees are entitled to invest in. The widow was about seventy years of age at the time of the testator's death. There can be no accumulation of interest beyond the expiration of minority. (Real Prop. Law, §§ 61, 63, as amd.; Pers. Prop. Law, §§ 11–16, as amd.; *Manice v. Manice,* 43 N. Y. 303, 376, 385; *Matter of Hazelton,* 119 Misc. 389.) Consequently, the true construction of the will as to the personal property remaining in the executors' hands upon an allowance of the accounts is that said personal property shall remain in the hands of the executors in trust and be by them invested as required by law; that the annuity to the widow of $300, payable in quarterly installments of $75 each, and the expenses of fire insurance on the buildings on the real estate and the necessary repairs thereto, shall be paid first out of the income of said trust fund, and in case at the end of each year during the lifetime of the widow there shall remain a surplus of income and interest, after making the above payment of annuity and expenses aforesaid (the yearly date to be reckoned from the date of the death of the testator), the said surplus of income and interest shall be paid to the legatees mentioned in the 5th paragraph of the will, or their legal representatives, according to the respective shares therein given them, they being the persons presumptively entitled to the next eventual estate; that in case the annual interest and income shall be less than the total of the

sum of $300 and the amount of the expenses of insurance and repairs above mentioned, the deficiency shall be paid from the principal fund, and at the death of the widow the remaining principal trust fund shall be paid to the persons named in the 5th paragraph of the will, or to their legal representatives.

The next question to be considered is the disposition of the proceeds of the real estate mentioned in the 4th paragraph, consisting of house and lot, in case the same shall be sold. It appears in this proceeding that the assessed value of the real estate is $1,900, and the fair market value, $2,500. In case the property is sold, does the testator intend that the widow shall have the use and income from the proceeds, he having given her the use, possession, rents, issues and profits of the said real estate as long as she lives? It is necessary that the entire will shall be examined to determine what the testator's intention was. The testator directed that the expenses for fire insurance and repairs should come out of his estate, that is, out of his personal property. Of course all that would be paid for such fire insurance and repairs would deplete the fund out of which the annuity is to be paid, and ultimately the sum going to the residuary legatees. Paragraph 4 says that in case of sale the " proceeds of such sale shall be deposited by my executors in a Savings Bank or Trust Company at interest and form a part of my residuary estate to be disposed of according to the provisions of Paragraph ' Fifth ' of my will." The fund that is to be disposed of by the 5th clause of the will is what is left after fulfilling the prior paragraphs of the will. It does not seem that it was his intention that the expenses of fire insurance and repairs which are chargeable upon his estate should be saved by selling the real estate, thereby taking the use of residence away from the widow, and at the same time that the widow should not have the interest and income of the proceeds of the real estate.

He gives his widow the $4,000 and the $300 annuity, and at the same time he gives her the use and possession of the real estate, evincing a desire that his widow shall first be properly taken care of before anything shall go to his collateral relatives. It seems impossible that he intended that in case the real estate should be sold she should have nothing in place of the use and possession thereof. It is not improbable that when he used the words " she to have the use, possession, rents, issues and profits therefrom so long as she shall live," he considered the words " issues and profits therefrom " as synonymous with having the interest on the proceeds of the sale of the real estate. In other words, I believe that he intended that the proceeds of the real estate should be substituted for the use, possession and rents of the real estate. What-

ever doubts there may be as to this construction, I believe that they should be resolved in favor of the widow because the contents of the will taken all together evince the strongest desire for the welfare of the widow.

The 4th paragraph very plainly states what becomes of the real estate in case it shall not be sold during the widow's lifetime. My conclusion is that the true construction of the will as to the disposition of the proceeds of the real estate in case the same shall be sold is, that in the event that the widow and her coexecutor shall sell the real estate, they shall deposit the said proceeds in a savings bank or trust company at interest in the names of the said executors in trust, and pay the interest thereon over to the widow as long as she shall live, and at her death to distribute the principal thereof as provided in the 5th paragraph of the will, and that neither the fund arising from the sale of the real estate nor the interest thereon shall be used to pay the annuity given by the 3d paragraph of the will.

A decree will be entered accordingly.